**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 10-35746

ROBYN EILEEN MAIB

Debtor

**MEMORANDUM ON MOTION FOR
SUMMARY JUDGMENT OF ROBERT W. BOOS**

APPEARANCES:     ROBYN EILEEN MAIB
        4035 NW Cinnamon Circle
        Jensen Beach, Florida  34957
        Debtor, *pro se*

        ADAMS AND REESE LLP
          Richard H. Malchon, Jr., Esq.
          150 Second Avenue North
          Suite 1700
          St. Petersburg, Florida  33701
        HODGES, DOUGHTY & CARSON, PLLC
          Dean B. Farmer, Esq.
          Post Office Box 869
          Knoxville, Tennessee 37901
          Attorneys for Robert W. Boos

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

Before the court is the Motion for Summary Judgment and Memorandum of Law of Interested Party, Robert W. Boos, filed on March 10, 2011, and amended on the same date (Motion for Summary Judgment), asking the court to grant him a summary judgment denying the Motion for Contempt filed by the Debtor on December 20, 2010. The Motion for Summary Judgment is accompanied by a Statement of Undisputed Facts in Support of Motion for Summary Judgment of Interested Party, Robert W. Boos (Statement of Undisputed Facts) and seven supporting exhibits: (A) Affidavit of David Chortek; (B) Affidavit of Robert W. Boos; (C) Affidavit of Scott Brown; (D) transcript of Robyn Maib deposition taken May 12, 2010; (E) transcript of George Maib deposition taken March 30, 2010; (F) Affidavit of Ralph P. Mangione; and (G) Second Amended Complaint for Declaratory and Injunctive Relief filed on May 22, 2009, styled *Ocean Concrete, Inc. and George Maib v. Indian River County, Board of County Commissioners*, Case No. 20071589-CA-17 in the Circuit Court for the Nineteenth Judicial District, Indian River County, Florida. The Debtor filed Debtor's Objection to Robert W. Boos' "Notice of Opportunity to Object and For Hearing" and for Robert W. Boos' "Amended Motion for Summary Judgment and Memorandum of Law of Interested Party, Robert W. Boos" (Response to Motion for Summary Judgment) on April 7, 2011. The Response to Motion for Summary Judgment was not filed by the Debtor in compliance with E.D. Tenn. LBR 7056-1(b) within the 21-day time period required by E.D. Tenn. LBR 7007-1, and all material facts set forth in Mr. Boos' Statement of Undisputed Facts are therefore deemed admitted.[1]

---

[1] A preliminary hearing on the Motion for Contempt was held on February 3, 2011. At that hearing, the court set a June 6, 2011 trial date and fixed March 10, 2011, as the date by which dispositive motions were to be filed. Notwithstanding the Debtor's "General Comment" in her Response to Motion for Summary Judgment that she believed no response to be required, the court explained the summary judgment process and the bankruptcy court's local rules, including the local rule requiring a response to a motion for summary judgment within 21 days, to Ms. Maib in open
(continued...)

# I

On June 19, 2006, the Debtor and her husband, George Maib, executed and delivered a Note (Maib Note) in the principal amount of $2,700,000.00 to Columbian Bank and Trust Company. STMT. OF UNDISP. FACTS at ¶ 1; CHORTEK AFF. at ¶ 4; CHORTEK AFF. EX. A; BOOS AFF. at ¶ 4. As security for the Maib Note, George Maib executed and delivered to Columbian Bank and Trust Company on June 19, 2006, a Mortgage and Security Agreement (George Maib Mortgage and Security Agreement) encumbering real property he had acquired, individually, through a Trustee's Deed dated May 10, 2005, described as "That part of Government Lot 3, lying West of the Florida East Coast Railroad, in Section 8, Township 31 South, Range 39 East, Indian River County, Florida" (George Maib Real Property), along with all personal property related to, affixed to, or located on the George Maib Real Property. STMT. OF UNDISP. FACTS at ¶¶ 1, 3; CHORTEK AFF. at ¶ 5; CHORTEK AFF. EX. B; BOOS AFF. at ¶¶ 4-5; BROWN AFF. COLL. EXS. A, B, C. The Debtor and George Maib were divorced in 2007, pursuant to the terms of a Marital Settlement Agreement dated November 11, 2007, constituting the "full, complete, and final settlement of all alimony rights, property rights, liabilities, and other responsibilities between the parties[,]" which included a waiver by the Debtor and George Maib of "any and all claims, demands, rights, title, or interests that he or she may have or hereafter acquire in any present or future asset of the other." MANGIONE AFF. at ¶¶ 3-4; MANGIONE AFF. EX. A at ¶¶ 22, 24. Subsequently, the Debtor and George Maib defaulted under

---

[1](...continued)
court. The court also suggested to Ms. Maib that she obtain a copy of the local rules from the clerk. An Order memorializing the February 3, 2011 hearing was entered the same day. Thereafter, on March 11, 2011, the day after the Motion for Summary Judgment was filed, the court entered an Order directing, *inter alia*, that "any response to Mr. Boos' Summary Judgment Motion shall be filed in accordance with E.D. Tenn. LBR 7056-1(b) within the time required by E.D. Tenn. LBR 7007-1." This Order was served on the Debtor.

the terms of the Maib Note by failing to pay the maturity payments due in January 2008, in the amount of $3,195,940.67, inclusive of principal and interest. CHORTEK AFF. at ¶ 12.

After Columbian Bank and Trust Company failed, the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver, and on February 27, 2009, the FDIC sold a loan pool, including the Maib Note, to LNV Corporation. STMT. OF UNDISP. FACTS at ¶¶ 4-5; CHORTEK AFF. at ¶¶ 7-9. Pursuant to a Limited Power of Attorney executed by the FDIC in favor of certain LNV Corporation executives to execute "all instruments of transfer and conveyance . . . as may be necessary or appropriate to evidence the sale and transfer of any asset contained in the Loan Pool[,]" an Assignment of Mortgage and Security Agreement was executed on February 27, 2009, which included the George Maib Mortgage and Security Agreement. CHORTEK AFF. at ¶¶ 7-10; CHORTEK AFF. EXS. C, D. LNV Corporation, which has been represented by Robert Boos and his law firms since March 2009, filed a Complaint on July 15, 2009, initiating Case No. 09-cv-14239-DLG in the United States District Court for the Southern District of Florida, Fort Pierce Division (Florida Foreclosure Action), styled *LNV Corporation v. George A. Maib, Robyn E. Maib, and William J. Woody, Sr. Family Trust*, seeking to, *inter alia*, foreclose the George Maib Mortgage and Security Agreement encumbering the George Maib Real Property. STMT. OF UNDISP. FACTS at ¶¶ 1, 6; BOOS AFF. at ¶¶ 1, 6. A Summary Final Judgment of Foreclosure was entered in favor of LNV Corporation in the Florida Foreclosure Action on October 4, 2010, granting the Plaintiff a judgment against George Maib and Robyn Maib in the amount of $3,363,412.35, including principal, interest, costs and expenses, and attorneys' fees, and directing the United States Marshal to sell the George Maib Real Property at public sale, which was subsequently scheduled for December 2, 2010, at

10:00 a.m.  STMT. OF UNDISP. FACTS at ¶¶ 7-8; BOOS AFF. at ¶¶ 7-8; RESP. TO MOT. FOR CONTEMPT EX. C.

      The Debtor filed the Voluntary Petition commencing her bankruptcy case on December 1, 2010.  On the morning of December 1, 2010, Robert Boos was advised that the Debtor had filed her bankruptcy case and that she had filed a Suggestion of Bankruptcy in the Florida Foreclosure Action on that same date.  STMT. OF UNDISP. FACTS at ¶ 9; BOOS AFF. at ¶ 9; BOOS AFF. EX. A; RESP. TO MOT. FOR CONTEMPT EX. D.  A subsequent search of the docket in the Debtor's bankruptcy case reflected that she had not filed any statements and schedules along with her Voluntary Petition, and Robert Boos directed that an updated title search be conducted to confirm that George Maib held sole title to the George Maib Real Property.  STMT. OF UNDISP. FACTS at ¶¶ 10-11; BOOS AFF. at ¶¶ 10-11; BOOS AFF. COLL. EX. B; BROWN AFF. at ¶¶ 3-4; BROWN AFF. COLL. EXS. A, B, C.  Based upon these confirmations and after consultation with other attorneys in his law firm, including those with bankruptcy experience, and upon the express direction of the law clerk to United States District Court Judge Graham, Robert Boos filed an Acknowledgment of Receipt of Defendant Robyn L. Maib's Suggestion of Bankruptcy and Position Regarding the Operation of the Automatic Stay in the Florida Foreclosure Action.  STMT. OF UNDISP. FACTS at ¶ 12; BOOS AFF. at ¶ 12; RESP. TO MOT. FOR CONTEMPT EX. E.  Robert Boos also advised David Steinfeld, who represented the Debtor in the Florida Foreclosure Action, that his firm had taken the position that the Debtor held no legal interest in the George Maib Real Property, that it was not property of her bankruptcy estate, and that the automatic stay did not, therefore, operate to stay the pending foreclosure sale.  STMT. OF UNDISP. FACTS at ¶ 13; BOOS AFF. at ¶ 13; BOOS AFF. EX. A.  In his response, David Steinfeld concurred that since the Debtor did not appear on the title to the property, the automatic stay might not stay the

sale, but also noted that LNV Corporation had alleged in the Complaint initiating the Florida Foreclosure Action that the Debtor had an interest in the George Maib Real Property; however, it was immaterial because George Maib was filing for bankruptcy, which he did on December 2, 2010, resulting in the cancellation of the foreclosure sale. STMT. OF UNDISP. FACTS at ¶¶ 13, 23 n.4; BOOS AFF. at ¶ 13; BOOS AFF. EX. A.

## II

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, amended effective December 1, 2010, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" with the procedures concerning summary judgment requiring the following:

> (1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would admissible in evidence.
>
> (3) *Materials Not Cited*. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) *Affidavits or Declarations*. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

> admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c) (applicable in contested matters by virtue of Rules 9014(c) and 7056 of the Federal Rules of Bankruptcy Procedure).

When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The Movant bears the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material fact and the Debtor's claims are factually unsupported, entitling her to judgment as a matter of law. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the Debtor, the nonmoving party, to prove that there are genuine disputes of material fact for trial, although reliance solely on allegations or denials contained in the pleadings or "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).

The facts and all resulting inferences are viewed in a light most favorable to the non-movant, with the court deciding whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

*Matsushita*, 106 S. Ct. at 1356 (citations omitted). Based upon the record, the court finds that there is no genuine dispute as to any material fact, that there was no violation of the automatic stay, and Robert Boos is, therefore, entitled to judgment as a matter of law.

### III

In her Motion for Contempt, the Debtor argues that Robert Boos "intentionally and willfully violated 11 U.S.C. 362 and proceeded to have A United States Marshal begin to sell the Real Property which secures an obligation to the Debtor in the amount of $2,000,000.00, on the State Court House steps in Vero Beach, Florida, on the morning of December 2, 2010." MOT. FOR CONTEMPT at ¶ 3. However, the scheduled foreclosure sale was stayed by the filing of a bankruptcy petition by George Maib and was subsequently cancelled. Robert Boos did not take any action that violated the automatic stay with respect to the Debtor.

Upon the filing of the Debtor's case, all of her property and interests in property became property of her bankruptcy estate. 11 U.S.C. § 541(a) (2006). Additionally, the automatic stay went into effect, prohibiting all creditors from engaging in "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and remains in effect until the case is either dismissed or closed, the Debtor receives or is denied discharge, or it is terminated by operation of law. 11 U.S.C. § 362(a), (c)(2) (2006). The automatic stay remains in effect through the pendency of a debtor's case in order to provide a "breathing spell" from collection efforts and to promote equal treatment of creditors. *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001). Actions taken in violation of the stay are "invalid and voidable and shall be voided absent limited equitable circumstances[,]" *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905,

911 (6th Cir. 1993), and courts will determine if a violation is willful. Specific intent or awareness that an action violates the stay is not required, however, as knowledge of the bankruptcy case is sufficient. *Printup*, 264 B.R. at 173. Automatic stay violations are willful when the creditor had knowledge of the bankruptcy case when it deliberately carried out the prohibited act. *Printup*, 264 B.R. at 173. In the event of a willful violation resulting in an actual injury suffered by a debtor, §362(k)(1) mandates an award of actual damages, including costs and attorneys' fees, and allows for punitive damages when appropriate. *In re Skeen*, 248 B.R. 312, 318 (Bankr. E.D. Tenn. 2000) (quoting *Archer v. Macomb County Bank*, 853 F.2d 497, 500 (6th Cir. 1998)).

While a creditor's inaction or failure to suspend an action can constitute a violation of the automatic stay, *see, e.g., In re Jessamey*, 330 B.R. 80, 86 (Bankr. D. Mass. 2005), the provisions of § 362(a) apply only to stay actions against debtors, their property, or property of their bankruptcy estate and traditionally do not apply to "litigation that collaterally affects the debtor." *In re Log, LLC*, 2010 WL 4774347, at *2 (Bankr. M.D.N.C. Nov. 9, 2010); *see also In re Torrez*, 132 B.R. 924, 944 (Bankr. E.D. Cal. 1991) (stating that § 362(a)(6) did not preclude creditors from enforcing their rights to payment against non-debtors and that foreclosure against non-estate real property likewise did not violate § 362(a)(3)); *Advanced Ribbons & Office Prods., Inc. v. U.S. Interstate Distrib., Inc.*, 125 B.R. 259, 265 (B.A.P. 9th Cir. 1991) (holding that the automatic stay does not prevent "the foreclosure of third party property that is pledged to secure a debt of the debtor").

The record before the court is unequivocal: the George Maib Real Property was owned exclusively by George Maib, and the Debtor holds no legal or equitable interest in the George Maib

Real Property. In her Response to Motion for Summary Judgment, the Debtor argues the following concerning the George Maib Real Property:

1. I was the wife of George Maib when the property was purchased.

2. The funds used to make the original land purchase in 2005 were from **our jointly owned funds** as husband and wife.

3. The development idea and concept to develop the property into a concrete manufacturing plant was **made jointly and equally by both of us**.

4. The funds borrowed in 2006 to develop said property into a concrete manufacturing plant **were borrowed by both of us equally**.

5. The *controlling* loan document, (**see Exhibit A; "The Loan Agreement", Memorandum from the Debtor 02. 01. 2011**)[2] which has **never** been provided, referenced to or discussed in any communication to this or any other Court by Mr. Boos, clearly shows:

a) That the development funds (**$2,700,000**) were loaned to **both of us jointly and equally**,

b) That, as a **pre-condition** for the lender making the loan to us, **we pledged all of our combined assets** including our **personal home** as additional security and the lender further **required** us to grant, assign and transfer to lender a **contractual security interest in our jointly owned checking account of $310,500** as additional security to the lender,

c) That **I personally signed and executed** all documents required and necessary to cause the loan to be closed and funded by the lender that created a great and significant personal legal financial obligations [sic] for both of us as borrowers under the loan agreement, which included, but was not limited to the Note and the attached Loan Agreement which was secured by the Mortgage,

d) That **both of us equally and individually** guaranteed the repayment of the loan,

e) That the borrowed funds from the loan could be used by **either** of us to: ". . . .pay the cost of acquiring and developing the property and **any other lawful purpose."** **It is important to note that I was a direct and equal investor in the original land**

---

[2] This Loan Agreement, attached to the Memorandum From the Debtor filed on February 1, 2011, in response to Mr. Boos' Response to Motion for Contempt filed on January 21, 2011, was executed on June 19, 2006; however, the George Maib Real Property was purchased by George Maib on May 10, 2005. MEMO. EX. A.

10

> **purchase in 2005, and a direct and equal borrower; (not merely a third party guarantor of the Note and Mortgage holding no direct interest or future benefits in the development or sale of the property).**
>
> 6. Approximately 3 years after purchasing the vacant land and approximately 1½ year's [sic] after borrowing the funds from lender for its development, my husband and I divorced. As a part of the divorce decree, we entered into a **"Marital Settlement Agreement"** wherein our **combined assets**, which included the property that is subject to the Foreclosure Action, **were divided and distributed**. This document is recorded in the Public Records and **Mr. Boos had a copy of the document for his review and use**.
>
> 7. By far, the largest asset and largest liability was the property now subject to LNV's Foreclosure Action. It was agreed by us and through our respective attorneys, that I would be paid, over a fixed period of time, approx. $ 2,168,000 for **my initial investment and continuing interest in the property and its'** [sic] **development into a concrete manufacturing plant** since I could not and have not been released from liability of the Note and Mortgage securing the loan of $2,700,000. As such, I still have an equitable interest as well as the financial liability since I have not yet been paid for my equitable interest as required by the Marital Settlement Agreement.

RESP. TO MOT. FOR SUMM. JUDG. at 10-14 (emphasis in original).

Although they were married at the time and the George Maib Real Property may have been purchased with joint funds, the Debtor was not a party to the May 10, 2005 Trustee's Deed by which George Maib acquired the George Maib Real Property. Contrary to her argument, being obligated on the debt for the George Maib Real Property pursuant to the Maib Note jointly executed by the Debtor and George Maib does not constitute ownership in the George Maib Real Property, which is accomplished only through deed of transfer, in this case the May 10, 2005 Trustee's Deed executed solely in favor of George Maib. The "equitable distribution" interest against the property that the Debtor claims in her Motion for Contempt, her Response to Motion for Summary Judgment, and her bankruptcy statements and schedules is insufficient in the face of the documentary proof to

the contrary to establish that she holds any ownership interest, legal or equitable, in the George Maib Real Property.

Furthermore, any marital interest that she might have held in the George Maib Real Property was expressly waived and/or released under the Marital Settlement Agreement executed on November 11, 2007, in conjunction with the divorce of the Debtor and George Maib. *See* MANGIONE AFF. EX. A. With respect to property distribution that the Debtor argues is associated with the George Maib Real Property, the Marital Settlement Agreement states the following:

> 19. **Ocean Concrete, Inc.**  The Husband shall have as his sole and separate property, free of any claim and or responsibility by the Wife, the business known as Ocean Concrete, Inc., together with all its assets, including the land, and all its liabilities and he shall be responsible for any liabilities of said business and shall indemnify and hold harmless the Wife from payment of same.
>
> The Husband shall "buy out" the Wife from her share of the business for the sum of $2 million to be paid as follows:  The Husband shall pay the Wife monthly an amount such that together with child support, the Wife receives a total of $6,000 per month for seven (7) years.  The payments will commence and be paid on the same date and in the same manner as child support is paid and shall continue for a period of seven years at which time a balloon payment for the remaining balance due ($2 million less all payments made as and for equitable distribution) shall become due.
>
> . . . .
>
> 22. **Release**.  Except as otherwise provided in this agreement, each party waives any and all claims, demands, rights, title, or interests that he or she may have or hereafter acquire in any present or future asset of the other.  This release includes, but is not limited to, the right to elect to take against any Will or Codicil of the other party; the right to share in the other party's estate; the right to act as executor, administrator, or personal representative of the other party's estate; the right to claim dower, courtesy, inheritance, descent, distribution, or any other rights or claims arising out of the marital relationship; the right to share in any pension or retirement benefits of the other; and the right to share in any litigation awards or proceeds the other may receive.  This release is binding on the executors, administrators, personal representatives, heirs, and assigns of each of the parties.

. . . .

24. **Full Settlement**. Each party agrees that this agreement constitutes the entire marital settlement agreement of the parties. This agreement supersedes any prior understandings or agreements between them, whether or not the matters were covered in this agreement. There exists [sic] no representations or warranties other than those set forth herein. The parties acknowledge that this agreement constitutes the full, complete, and final settlement of all alimony rights, property rights, liabilities, and other responsibilities between the parties. This agreement is a full, complete, and final settlement of all claims of any nature whatsoever that either party may have against the other, now or in the future, except as expressly provided for herein. Each party is signing this agreement freely and voluntarily, intending to be bound by it.

MANGIONE AFF. EX. A at ¶¶ 19, 22, 24. Irrespective of the Debtor's arguments that she holds an equitable interest in the George Maib Real Property under her divorce settlement, the document itself proves otherwise.[3] George Maib's ownership is also supported by the deposition testimony of both the Debtor and George Maib. When asked whether she ever owned or held title to the George Maib Real Property during a deposition held on May 12, 2010, the Debtor stated that she didn't know if her name was on any documents, that it was something George Maib handled. STMT. OF UNDISP. FACTS at ¶ 15; R. MAIB DEPO. at 46, ln.2-9. Similarly, in his deposition taken March 30, 2010, George Maib testified that the Debtor was not on the George Maib Mortgage and Security Agreement, that she was on the Maib Note for security interest only, and that he owned the George Maib Real Property. STMT. OF UNDISP. FACTS at ¶ 16; G. MAIB DEPO. at 83, ln.19-23.

Moreover, the fact that the foreclosure of the George Maib Real Property could have resulted in a deficiency claim against the Debtor does not mean Robert Boos violated the automatic stay

---

[3] It is also important to note, once again, that the George Maib Real Property's sole owner of record is George Maib, notwithstanding the reference in the Marital Settlement Agreement to "the land" being an asset of Ocean Concrete, Inc. *See also* STMT. OF UNDISP. FACTS at ¶ 19.

when he did not cancel the sale on December 1, 2010.[4]  As determined by the Fourth Circuit Court of Appeals,

> Certainly Geris has an interest, and a material one, in having the value of the Manassas property maximized, insofar as it bears directly on the size of the deficiency for which he may be obligated to Peoples National Bank.  But if we were to accept this interest as sufficient to invoke in Saratoga's favor the automatic stay provisions of 11 U.S.C. § 362(a), we would be cutting off foreclosure rights of secured creditors in any property standing as security for a debt that happened to be guaranteed by a bankrupt.  This cannot have been an intended function of the automatic stay provision, any more than it was intended to prevent a secured creditor from collecting from or foreclosing on the property of a bankrupt debtor's guarantors or codebtors.

*In re Geris*, 973 F.2d 318, 321 (4th Cir. 1992) (citations omitted); *see also Log, LLC,* at *5 ("The interests of the Debtor in avoiding a deficiency judgment . . . are far too attenuated to be protected by the automatic stay . . . [and t]he automatic stay does not enjoin . . . foreclosure . . . even though the foreclosure may have an effect on the Debtor's reorganization."); *In re Everchanged, Inc.*, 230 B.R. 891, 895 (Bankr. S.D. Ga. 1999) ("[W]hile an attempt to collect a deficiency violates the stay, the act of foreclosing against property outside of the bankruptcy estate does not.").

In summary, there was no violation of the automatic stay by Robert Boos.  Accordingly, the Debtor did not suffer an injury as a result of any stay violation, and there are no damages to be assessed.  The Motion for Summary Judgment filed by Robert Boos on March 10, 2011, will be

---

[4] As previously noted, although the foreclosure sale was not cancelled on December 1, 2010, the date the Debtor filed her petition, it was cancelled on December 2, 2010, the date George Maib filed his bankruptcy petition in Florida.

granted, and the Debtor's Motion for Contempt filed on December 20, 2010, will be denied.[5]  The June 6, 2011 trial on the Motion for Contempt will be stricken from the docket.

An Order consistent with this Memorandum will be entered.

FILED:  April 12, 2011

                                               BY THE COURT

                                               /s/  RICHARD STAIR, JR.

                                               RICHARD STAIR, JR.
                                               UNITED STATES BANKRUPTCY JUDGE

---

[5] Mr. Boos also seeks an award of attorneys' fees and costs for defending the Motion for Contempt.  A prevailing party is not entitled to attorneys' fees in the Sixth Circuit unless such remedy is expressly provided for by contract or statute.  *See Tiedel v. Northwestern Mich. College*, 865 F.2d 88, 93 (6th Cir. 1988); *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1168 (6th Cir. 1985).  Additionally, the court will not allow Mr. Boos' "costs" as the prevailing party.  *See* FED. R. BANKR. P. 7054(b).  To do so against this insolvent *pro se* Debtor would be punitive.